IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRANS WORLD ENTERTAINMENT CORP., | ) | CASE NO.  5:04CV2269 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Judge John M. Manos |
| | ) | |
| HARTFORD LIFE INSURANCE CO., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | <u>MEMORANDUM OF OPINION</u> |

On November 15, 2004, the Defendants removed this action to this Court from the Court of
Common Pleas for Stark County, Ohio.  Subsequently, each of the Defendants filed a motion to dismiss
the Plaintiff's Complaint.  (<u>See</u> Docket Nos.  14, 15, 16, and 17.)  The parties have fully briefed the
issues.

For the following reason, the motions are GRANTED.

I.  <u>FACTS</u>

A.  <u>The Parties</u>

Trans World Entertainment Corp., plaintiff, a New York corporation, is a music and video

retailer.  The Plaintiff is successor-in-interest to CM Holdings, Inc., an Ohio Corporation, and various affiliated companies (collectively "CM Holdings").  The Plaintiff has brought suit against the Defendants arising out of an insurance plan allegedly issued and administered by the Defendants.  (Complaint at ¶¶ 1, 14.)  All the Defendants are non-Ohio and non- New York entities.

Defendant Hartford Life Insurance Co. ("Hartford") is described by the Plaintiff as an expert in developing, promoting, selling, and administering  life insurance plans of the category at issue in this case.  Defendant International Corporate Marketing Group ("ICMG") is alleged to be an "indirect" subsidiary of Hartford that provided marketing, administration, and related services with respect to Hartford's insurance plans. Defendant The Newport Group ("Newport") is an insurance broker and consultant that allegedly advised the Plaintiff with respect to the Hartford insurance plan at issue. (Complaint at ¶¶ 15-17.)

Defendants Integrated Administration Services, Inc., IAS Development Corp., and The McCamish Group, L.P. are affiliated companies owned and/or controlled by Defendant Henry F. McCamish, Jr. (collectively the "McCamish Defendants").  They allegedly provided design, marketing, and administration services with respect to the Hartford insurance plan at issue.  (Complaint at ¶¶ 18-21.)

Defendant Milliman, Inc. ("Milliman") is a Washington corporation that allegedly provided design, marketing, and administration services with respect to the Hartford insurance plan at issue. (Amended Complaint at ¶ 22.)

B.  Factual Background

This case involves a particular kind of life insurance plan known as a Corporate Owned Life

Insurance ("COLI") plan.  COLI plans are life insurance plans taken out by corporations on employees for the purpose of funding various employee benefits, such as health benefits.  COLI plans were initiated to take advantage of certain tax and accounting rules to provide cash flow for funding employee benefits.  In particular, positive cash flow was created through favorable tax treatment including:  (1) the deductibility of interest on policy-based loans, (2) tax-deferred buildup of policy values, and (3) the tax exempt receipt of death benefits upon the death of a covered employee.  As further explained below, CM Holdings insured thousands of employees through its COLI plan. (Complaint at ¶¶ 2, 6, 25-27.)

The Plaintiff alleges that Defendant Newport, an insurance broker, advised CM Holdings in connection with the evaluation and selection of a COLI plan to meet its financial goals.  Newport held itself out as an expert in such plans and guided CM Holdings through the decision-making process. Newport further represented that in the event of a change in tax law or accounting treatment, the plan could be altered or unwound with little loss to CM Holdings.  CM Holdings allegedly relied on Newport's expertise and assurances in evaluating and selecting its COLI plan.  (Complaint at ¶¶ 8, 33-36, 38, 40-41, 43, 49-51.)

On February 16, 1990, CM Holdings instituted a COLI plan underwritten by Mutual Benefit Life Insurance Co. (the "MBL plan"), which was later assumed by Defendant Hartford.  Without parceling out the specific conduct of each party, the Plaintiff alleges generally that Newport, the McCamish Defendants, and Milliman all advised CM Holdings with respect to this plan. In addition, after the COLI plan was instituted, Newport continued to provide administration services, for which it was paid several million dollars.  (Complaint at ¶¶ 3,32, 37, 39, 45-46, 49, 52-54.)

In the initial years of the plan, CM Holdings claimed various tax benefits, including hefty interest deductions from policy-based loans used to fund employee benefits.  In 1996, however, Congress prospectively disallowed COLI interest deductions as part of the Health Insurance Portability and Accountability Act.  Subsequently, the Internal Revenue Service ("IRS") began to challenge *retrospectively* the tax deductions and benefits claimed by numerous companies before the statutory change.  Courts found COLI plans to be "tax shams" and void *ab initio*.  One such case involved the CM Holdings plan at issue here.  See  In re CM Holdings, 254 B.R. 578 (Bankr. D. Del. 2000), aff'd, 301 F.3d 96 (3d Cir. 2002).  See also Winn-Dixie Stores, Inc. v. C.I.R., 113 T.C. 254 (1999), aff'd, 254 F.3d 1313 (11th Cir. 2001); AEP, Inc. v. United States, 136 F. Supp. 2d 762 (S.D. Ohio 2001), aff'd, 326 F.3d 737 (6th Cir. 2003).  (Complaint at ¶¶ 10-11, 47.)

The Plaintiff alleges that CM Holdings was never fully apprised of the risks of changes to the tax treatment of COLI plans.  To the contrary, the Plaintiff alleges that the Defendants made repeated assurances as to the financial effectiveness of the plan, and downplayed the potential consequences of any changes to the tax treatment.  The various purported misrepresentations and fraudulent concealments, as well as ways by which COLI plans differed from typical life insurance plans, are detailed in the Complaint.  (Complaint at ¶¶ 47, 56-85.)

According to the Plaintiff, the Defendants knew or should have known of the financial risks associated with COLI plans years before the IRS explicitly challenged CM Holdings' plan. For example, in 1991 an MBL official recognized in a memorandum that the plan's dividend structure could raise tax issues with "potentially disastrous results".  Similarly, in 1993 the Connecticut Insurance Department questioned the dividend structure of  Hartford's plans.  In 1994, employees of several

-4-

Defendants met with the Connecticut Insurance Department to discuss these issues. Other state regulators began questioning the viability of COLI plans during the same time period.  These facts were never disclosed to CM Holdings.  (Complaint at ¶¶ 42, 74-80.)

The Plaintiff alleges that its losses (excluding tax deduction disallowances) amount to tens of millions of dollars (the exact amount to be determined at trial), which was paid to the Defendants as fees and insurance premiums in connection with the evaluation, creation, and administration of the COLI plan.

C.  Procedural History

On October 14, 2004, the Plaintiff brought suit in the Court of Common Pleas for Stark County, Ohio.  On November 15, 2004, the Defendants removed the action to this Court.  The Complaint contains sixteen counts.

Counts 1-5 and 7 are asserted against all Defendants and allege that the fundamental purpose of the COLI plan was to provide an economically viable method of funding employee benefits.  The changes in tax treatment undermined that purpose.  Because the COLI plan did not provide the promised financial benefits, the Plaintiff seeks recovery of its losses under the doctrines of mutual mistake (Count 1), frustration of purpose (Count 2), impossibility of performance (Count 3), impracticability (Count 4), want of consideration (Count 5), and failure of consideration (Count 7).

The Plaintiff asserts Count 6 against all Defendants for unjust enrichment.  The Plaintiff alleges that it suffered substantial losses in the form of moneys paid to the Defendants for the development and administration of the failed COLI plan .  The Defendants, therefore, were unjustly enriched and should be required to disgorge their profits.

-5-

The Plaintiff asserts Count 8 against all Defendants for breach of contract. The Plaintiff alleges that it entered into contracts with the Defendants regarding the development and administration of the COLI plan, and the Defendants breached those contracts by not disclosing all material information relating to the plan.

The Plaintiff asserts Count 9-11 against all Defendants for professional negligence (Count 9), negligence *per se* (Count 10), and negligent misrepresentation (Count 11) . The Plaintiff alleges that the Defendants breached the standard of care applicable to professional insurance brokers and companies with regard to the advice and consulting services provided relating to the COLI plan.

The Plaintiff asserts Counts 12-15 against all Defendants. In Count 12, the Plaintiff alleges that the Defendants fraudulently concealed material information with respect to the COLI plan, and but for such concealments, CM Holdings would never have adopted such plan. In Count 13 the Plaintiff alleges that the Defendants breached fiduciary duties owed with respect to advice and consulting regarding the development and administration of the COLI plan. In Count 14, the Plaintiff alleges that these Defendants committed "equitable fraud" by making false statements, misleading representations, and omissions regarding the COLI plan, and that the CM Holdings relied on such statements, representations, and omissions to its detriment. The Plaintiff asserts Counts 15 against all Defendants for civil conspiracy, alleging that the Defendants conspired "to commit wrongful and/or unlawful acts" with respect to the COLI plan.

The Plaintiff asserts Count 16 seeking declaratory relief against all Defendants. The Plaintiff seeks a declaration that the Defendants are responsible for the Plaintiff's future losses that may result from the failed COLI plan.

## II.  LAW AND ANALYSIS

A.  Standard For Dismissal

The Defendants have moved to dismiss because the Complaint allegedly does not state a claim upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss, the allegations in the complaint are taken as true and viewed in the light most favorable to the Plaintiff.  A complaint will not be dismissed "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Hiser v. City of Bowling Green, 42 F.3d 382, 383 (6th Cir. 1994), cert. denied, 514 U.S. 1120 (1995), quoting, Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio, 900 F.2d 882, 885 (6th Cir. 1990). The complaint need only give fair notice as to the claim and the grounds upon which it rests.  In re DeLorean Motor Co., 991 F.2d 1236, 1240 (6th Cir. 1993).

Conclusory  allegations, however, are not sufficient to state a claim.  Rather, a complaint must set forth specific facts which, if proven, would warrant the relief sought.  Sisk v. Levings, 868 F.2d 159, 161 (5th Cir. 1989).  In addition, a court is not bound to accept as true a legal conclusion couched as a factual allegation.  Papasan v. Allain, 478 U.S. 265, 286 106 S. Ct. 2932, 2944 (1986).  A court likewise need not accept unwarranted factual inferences.  Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987).

B.  Statutes of Limitations

The Defendants argue that the Plaintiff's claims are barred by the applicable statutes of limitations.  This argument raises three issues: (1) what is the limitations period applicable to each claim,

(2) when did the various causes of action accrue, thereby commencing the limitations periods, and (3) was the limitations period tolled as to any of the claims.  Ohio law applies to the determination and application of the statutes of limitations.  <u>Cole v. Mileti</u>, 133 F.3d 433, 436-37 (6th Cir. 1998).

> 1.  <u>The Applicable Limitations Periods</u>

There are four Ohio statute of limitations provisions relevant to the Defendants' motions, and at least as to certain claims, the parties dispute the applicable provision.  Under Ohio law, the statute of limitations is fifteen years for breach of a written contract, O.R.C. § 2305.06, and six years for breach of an unwritten or oral contract, express or implied.  O.R.C. § 2305.07.  In addition, Ohio law prescribes a four-year statute of limitations for certain business torts, including negligence and fraud.  O.R.C. § 2305.09(C) and (D) .  Furthermore, for claims not covered by other provisions, Ohio law contains a general provision establishing a ten-year limitations period for such non-covered claims.  O.R.C. § 2305.14.

The underlying nature of the action, and not the form in which it is pled, determines which statute of limitations applies.  <u>Hunter v. Shenago Furnace Co.</u>, 38 Ohio St. 3d 235, 237 (Ohio 1988); <u>Hambleton v. R.G. Barry Corp.</u>, 12 Ohio St. 3d 179, 183 (1984); <u>Peterson v. Teodosio</u>, 34 Ohio St. 2d 161, 172-73 (1973); <u>Helman v. EPL Prolong, Inc.</u>, 743 N.E.2d 484, 493 (Ohio App. 2000); <u>Lynch v. Dean Witter Reynolds, Inc.</u>, 731 N.E.2d 1205, 1207 (Ohio App. 1999); <u>Palm Beach Co. v. Dunn & Bradstreet, Inc.</u>, 665 N.E.2d 718, 722 (Ohio App. 1995); <u>Wolfe v. Continental Casualty Co.</u>, 647 F.2d 705, 709 (6th Cir. 1981).

The parties first dispute the limitations period applicable to Counts 1-4 for mutual mistake, frustration of purpose, impossibility of performance, and impracticability against all Defendants.  The

-8-

Defendants argue that these claims are subject to the four-year limitations period for fraud and negligence claims.  They assert that the substantive nature of these claims is identical to the claims for negligent advice and thus are subject to the same statute of limitations.   Counts 1-4 all state that the "fundamental purpose" of the COLI plan designed and promoted by the Defendants "was to provide an economically viable method of funding its employees' post-retirement health care benefits."  The substance of these counts is that, contrary to the representations and assurances of the Defendants, the COLI plan did not satisfy this essential purpose.  The substantive nature of these counts, therefore, is negligence.  The Defendants allegedly gave unprofessional and substandard advice in promoting the COLI plan, which did not achieve the desired benefits.  The four-year limitations period, therefore, applies.

The Plaintiff argues that these counts explicitly are asserted to arise "without the fault of any party".  Accordingly, the statute of limitations for tort claims cannot apply.  The mere recitation of this phrase, however, is not sufficient to avoid the shorter limitations period.  The law requires the Court to apply the limitations period based upon the substantive nature of the claims, and not the form in which they are pled.  These claims substantively bare no significant difference from the negligence claims.

Alternatively, some of the Defendants take the position that at most, the six-year limitations period for oral or implied contracts applies pursuant to O.R.C. § 2306.07.  Under this view, the Defendants' assurances with respect to the anticipated benefits of the COLI plan created oral or implied contracts for such benefits.  Although the Court takes the position that the four-year limitations period applies, this alternative characterization is not wholly unreasonable.  For completeness, therefore, in subsequent sections the Court will analyze Counts 1-4 under both the four-year and six-

year provisions.

The Plaintiff also argues, without citation to authority, that claims for mutual mistake, frustration of purpose, impossibility of performance, and impracticability are subject to a ten-year limitations period pursuant to O.R.C. § 2305.14. Such claims, however, are not mentioned in the statute. Rather, the statute states: "An action for relief not provided for in sections 2305.04 to 2305.131 and section 1304.35 of the Revised Code shall be brought within ten years after the cause thereof accrued." There is no basis to apply such a "catch-all" statute to claims that sound either in tort or implied contract. The ten-year limitations period does not apply.

Count 6 asserts a claim for unjust enrichment against all Defendants. Claims for unjust enrichment are "quasi-contractual" in nature and have been deemed, for statute of limitations purposes, as "implied contracts not in writing". The limitations period, therefore, is six years pursuant to O.R.C. § 2305.07. Hambleton, 12 Ohio St. 3d at 183; Board of Education of Rocky River v. Board of Education of Fairview Park, 597 N.E.2d 217, 219 (Ohio App. 1989); Ignash v. First Service Federal Credit Union, 2002 WL 1938414 at *4 (Ohio App. August 22, 2002). The parties do not dispute that the six-year limitations period applies to Count 6.

Count 8 asserts a claim for breach of contract against all Defendants. Similarly, Count 5 asserts a claim for "want of consideration", and Count 7 asserts a claim for "failure of consideration", relating to such contracts. Thus, Count 5, 7, and 8 substantively are all contract claims. The Plaintiff argues that the relevant contracts are in writing, so a fifteen-year limitations period applies pursuant to O.R.C. § 2305.06. The Defendants counter that the contract claims are substantively identical in their allegations to the negligence and/or fraud claims, so the four-year limitations period applies. Again, the

substance of these claims, and not the form in which they are pled, determines the applicable statute of

limitations.

The only written contracts referenced in the Complaint are the actual Hartford COLI plan, and

the Service Agreement executed between the Plaintiff and Defendant Newport.  The Plaintiff, however,

does not identify any specific term of these written contracts that was breached.  For example, the

Plaintiff does not allege that the insurance company did not provide the insurance benefits as stated in

polices, nor that the other Defendants, particularly Newport, did not comply with its obligations in

servicing and administering the plan.

The Plaintiff describes the alleged breach of contract as follows:

> As set forth herein, defendants failed to fulfill their contractual obligations to
> CM Holdings, including but not limited to, the covenant of good faith and fair
> dealing that is implicit in all contracts that would require Defendants to disclose
> all material information relating to the COLI plan in a thorough and accurate
> manner.

(Complaint at ¶ 133.)  With respect to the consideration claims, the Plaintiff states that the Defendants

provided "a valueless economic sham that constituted no consideration at all."  (Complaint at ¶¶ 120,

128.)  The Plaintiff does not, in these paragraphs or elsewhere in the Complaint, reference a specific

provision of any of the written contracts that is breached.  General references to breach of a contract

are not sufficient to allege breach of a specific term.  Palm Beach, 665 N.E. 2d at 721 (use of phrase

"*inter alia*" in complaint was deemed insufficient to allege breach of any specific contract term).  The

Court concludes, therefore, that the fifteen-year limitations period for breach of a written contract does

not apply.

The Court, therefore, must determine the substantive nature of Counts 5, 7, and 8.  As the

-11-

Defendants argue, some courts have deemed claims pled as breach of contract to be tort claims in substance.  For example, when an allegation of a contractual breach of an implied duty of good faith is indistinguishable from an allegation of fraud or bad faith, the four-year limitations period for fraud claims applies.  Palm Beach, 665 N.E.2d at 722; Wolfe, 647 F.2d at 709-10.  See also Lynch, 731 N.E.2d at 672-73 (statute of limitations for securities fraud applied to claims styled as breach of contract). The four-year limitations period for fraud claims also applies to claims for reformation or rescission of written documents based on fraudulent representations.  Seitz v. Stevenson, 1998 WL 328413 at *6 (Ohio App. June 16, 1998) (applied to reformation and rescission of deeds).  Similarly, the four-year limitations period applies to contract claims that simply restate professional negligence claims. Fronczak v. Arthur Andersen, L.L.P., 705 N.E.2d 1283, 1287 (Ohio App. 1997); Offenbeher v. Lomax, Soful, & Foster, Inc., 1996 WL 539134 at *6 (Ohio App. September 26, 1996).  The Defendants argue that the contract claims here likewise are indistinguishable from the fraud or negligence claims.

When read in the context of the entire Complaint, the claims for breach of contract, and for want and failure of consideration, can be understood as a breach of promises that the COLI plan would yield certain financial benefits that were never realized.  Subsumed within this general characterization are the allegations that the Defendants breached duties to disclose material information regarding the risks and benefits of COLI plans.  The promised benefits, however, were never incorporated into any of the written agreements, but rather are independent assurances.  In substance, therefore, the promises at most created oral and/or implied contracts.  Accordingly, a six-year limitations period applies to Counts 5, 7, and 8 pursuant to O.R.C. § 2305.07.

-12-

Counts 9-11 assert negligence claims against the Defendants, and Count 13 asserts a claim for breach of fiduciary duty.  O.R.C. § 2305.09(D) establishes a four-year statute of limitations period "for an injury to the rights of the plaintiff not arising on contract nor enumerated in [certain other] sections of the Revised Code."  Pursuant to this provision, the statute of limitations is four years for claims of professional negligence and negligent misrepresentation by business advisers, like accountants and financial brokers.  Fronczak, 705 N.E.2d at 1285; Castillo v. Nationwide Financial Services, Inc., 2003 WL 22078046 at * 3 (Ohio App. September 9, 2003); Offenbeher v. Lomax, Soful, & Foster, Inc., 1996 WL 539134 at *5 (Ohio App. September 26, 1996).  Similarly, section 2305.09(D) has been applied to claims for breach of a fiduciary duty.  Helman, 743 N.E.2d at 497; Kondrat v. Morris, 692 N.E.2d 246, 251 (Ohio App. 1997).  The parties do not dispute that a four-year limitations period applies to Counts 9-11 and 13.

Count 12 asserts a claim for fraudulent concealment against all Defendants, and Count 14 asserts a claim for equitable fraud.  Count 15 asserts a claim for civil conspiracy, which the Court concludes substantively is indistinguishable from the fraud claims. A four-year statute of limitations applies to fraud claims pursuant to O.R.C. § 2305.09(C).   The parties do not dispute that a four-year limitations period applies to Counts 12, 14, and 15.[1]

In summary, for the foregoing reasons the Court concludes that the following statutes of limitations apply: (1) four years, or at most six years, as to Counts 1-4, (2) six years as to Counts 5-8,

---

[1]     Count 16 asserts a claim for a declaratory judgment as to liability for future losses suffered by the Plaintiff.  In substance, Count 16 derives from the allegations underlying the other counts, so no independent analysis is required as to the statute of limitations for Count 16.

-13-

and (3) four years as to Counts 9-15.

### 2. Accrual of the Claims

Having determined the applicable statutes of limitations, the Court next considers when the various causes of action accrued. The accrual date is when the limitations periods began.

The Court first considers the Plaintiff's tort claims: Counts 1-4 (assuming they're substantively negligence claims), and Counts 9-15. The Defendants argue that of these claims, the non-fraud claims (Counts 1-4, 9-11, and 13) accrued at the time they were advising CM Holdings with respect to the adoption of the COLI plan. This means that the limitations period commenced, at the latest, in February 1990 when COLI plan was implemented. The Plaintiff, however, argues that these claims are timely because they did not accrue until many years later, when the Plaintiff discovered and/or was damaged by the Defendants' wrongful conduct.

O.R.C. § 2305.09(D) provides explicitly that a cause of action for fraud accrues when the fraud is, or should have been, discovered. See also Zemcik v. LaPine Truck Sales & Equipment Co., 706 N.E.2d 860, 865 (Ohio App. 1998); Palm Beach Co. v. Dunn & Bradstreet, Inc., 665 N.E.2d 718, 720 (Ohio App. 1995). This principle is known as the "discovery rule".

In contrast to fraud, however, the relevant clause of O.R.C. § 2305.09(D) does not explicitly provide for a discovery rule as to other business torts of the type asserted here. In Investors REIT One v. Jacobs, 46 Ohio St. 3d 176 (1989), the Ohio Supreme Court held that there is no discovery rule as to claims of accountant negligence. The court stated: "The legislature's express inclusion of a discovery rule for certain torts arising under R.C. 2305.09, including fraud and conversion, implies the exclusion of other torts arising under the statute, including negligence." Id. at 181. Thus, the limitations

-14-

period commenced when the allegedly negligent act occurred, i.e., when the negligent advice was given. Id. at 182.

Numerous courts have applied Investors REIT in rejecting a discovery rule for claims of various types of professional negligence in the business context, including accounting services, investment advice, and other business advice and representations.  In such cases, the cause of action accrues when the original negligent misrepresentations were made.  See, e.g., Castillo v. Nationwide Financial Services, Inc., 2003 WL 22078046 at * 3 (Ohio App. September 9, 2003); Jim Brown Chevrolet, Inc. v. S.R. Snodgrass, A.C., 752 N.E.2d 335, 337 (Ohio App. 2001); Offenbeher v. Lomax, Soful, & Foster, Inc., 1996 WL 539134 at *5 (Ohio App. September 26, 1996); Kondrat v. Morris, 692 N.E.2d 246, 251 (Ohio App. 1997); Aluminum Line Products Co. v. Brad Smith Roofing Co., 671 N.E.2d 1343,1350 (Ohio App. 1996) (rejecting discovery rule for claims of negligent building construction); Hater v. Gradison Division of McDonald and Company Securities, Inc., 655 N.E.2d 189, 197 (Ohio App. 1995); Herbert v. Banc One Brokerage Corp., 638 N.E.2d 161,163 (Ohio App. 1994).

The negligence alleged here in Counts 1-4 and 9-11 is comparable to the negligent advice given in other business and investment contexts.  Accordingly, the Court concludes that the discovery rule does not apply to these claims.

Similarly, the language of section 2305.09(D) does not provide for a discovery rule for claims of breach of a fiduciary duty.  Rather, the cause of action accrues when the breach of duty occurs, not when it is discovered.  Helman, 743 N.E.2d at 497-98; Kondrat, 692 N.E.2d at 251; Herbert, 638 N.E.2d at 164.  Accordingly, the discovery rule also does not apply to the Plaintiff's Count 13 for

breach of a fiduciary duty.

The Plaintiff attempts to avoid the limits of the discovery rule by relying on the principle of "delayed damages". In certain cases, the damages from a negligent act may not manifest until some period of time after the negligent act itself. Courts sometimes have held that the cause of action does not accrue until the damages actually occur. For example, in <u>Wisecup v. Gulf Develpment</u>, 565 N.E.2d 865 (Ohio App. 1989), the plaintiff brought suit for the negligent preparation of tax returns. The plaintiff alleged that the limitations period did not commence until he was actually damaged when the IRS rendered an adverse tax decision. The defendant argued that the limitations period commenced when the returns were prepared, years earlier. The court ruled in favor of the plaintiff. <u>Id</u>. at 869.

Th delayed damages principle is distinct from the discovery rule. Delayed damages cases deal with the onset of the injury, not the discovery of an injury which already has occurred. Under the delayed damages principle, a plaintiff's knowledge or discovery of the damages is irrelevant. <u>Point East Condominium Owners' Association, Inc. v. Cedar House Associates Co.</u>, 663 N.E.2d 343, 350 (Ohio App. 1995).

The Plaintiff alleges that, pursuant to the delayed damages principle, the tort claims did not accrue until August 16, 2002, when the Third Circuit affirmed a decision of a bankruptcy court that the CM Holdings COLI plan was a tax sham. <u>See</u> <u>In re CM Holding, Inc.</u>, 301 F.3d 96 (3d Cir. 2002). Only then did actual damages manifest from the Defendants' wrongful conduct. The Defendants argue that the delayed damages principle is inapplicable here. The Court agrees with the Defendants.

<u>Wisecup</u>, an Ohio appellate decision, was decided before the Ohio Supreme Court's decision in <u>Investors REIT</u>. In <u>Riedel v. Houser</u>, 607 N.E.2d 894 (Ohio App. 1992), involving a claim for

-16-

negligent preparation of tax returns, the court analyzed the two prior cases.  The court concluded that in

view of the plain language of O.R.C. § 2305.09(D), any difference between the delayed damages

principle and the discovery rule was a "distinction without a difference".   In addition, to the extent

Wisecup and Investors REIT conflicted, the latter controls.  Id. at 896.  The court concluded,

therefore, that the delayed damages principle was not applicable to claims of accountant negligence.

In similar reliance on Investors REIT, other courts likewise have refused to extend the

limitations period by virtue of delayed damages principles in case involving business professional

negligence, negligent misrepresentation, or breach of fiduciary duty.   Such courts have agreed that

O.R.C. § 2305.09(D) does not permit the extension of the limitations period for delayed damages.

Accordingly, as stated above, the limitations period commences when the negligent advice is given or

fiduciary duty is breached.  Jim Brown, 752 N.E.2d at 337-38; Hater, 655 N.E.2d at 195-96;

Fronczak v. Arthur Andersen, L.L.P., 705 N.E.2d 1283, 1285-86 (Ohio App. 1997); Rihm v. Wade,

1999 WL 1127403 at *3-4 (Ohio App. December 10, 1999).

The delayed damages cases, however, are not unanimous.  Other courts have continued to

apply the delayed damages principle despite the holding of Investors REIT and its progeny.  See Point

East, 663 N.E.2d at 349-50 (negligent building construction), citing, Velotta v. Leo Petronzio

Landscaping, Inc., 69 Ohio St. 2d 376, 379 (1982) (negligent building construction); Gray v. Estate of

Barry, 656 N.E.2d 729, 730-31 (Ohio App. 1995) (claim for negligent failure to file tax returns

accrues on date the IRS assessed a penalty, not when the filing was due).  See also Kunz v. Buckeye

Union Insurance Co., 1 Ohio St. 3d 79, 81 (1982) (claim for insurance coverage accrues on the date

of loss, not the date of contracting).  Many of such cases involve negligent building construction, not

-17-

negligent business advice or services.  Those business cases that apply the delayed damages principle

post-Investors REIT are in the minority.

      The Ohio Supreme Court confirmed the validity of Investors REIT in Grant Thornton v.

Windsor House, Inc., 57 Ohio St. 3d 158, 160 (1991).  In Grant Thornton, the counter-claimant

actually asserted a delayed damages theory in arguing that counterclaims for accountant negligence

were timely.  The counterclaims alleged negligent audits of Medicaid reimbursements, for which the

Ohio Department of Public Welfare ("OPDW), the state Medicaid agency, had demanded repayment.

As described by the Ohio Supreme Court, the appellate court ruled that the counterclaims "did not

accrue until Windsor sustained damage – when the ODPW ordered repayment".  Id. at 159.  The Ohio

Supreme Court rejected this delayed damages argument.

      The Court concludes that in this case, Investors REIT, Grant Thornton, and their progeny

preclude extension of the limitations period under a delayed damages theory.  This conclusion applies to

the Plaintiff's non-fraud tort claims – Counts 1-4, 9-11 and 13.  These claims accrued at the time the

alleged negligent advice was given and fiduciary duty was breached, which is no later than February 16,

1990 when the COLI plan was implemented.

      As stated above, O.R.C. § 2305.09(D) explicitly establishes a discovery rule for fraud.

Therefore, the fraud counts (including conspiracy), Count 12, 14 and 15, accrued when the fraud was,

or should have been, discovered.   Absent actual awareness, the limitations period begins when a party

possesses facts sufficient to alert a reasonable person to the possibility of wrongdoing.  Palm Beach,

665 N.E.2d at 720; Zemcik, 706 N.E.2d at 866; Seitz v. Stevenson, 1998 WL 328413 at *5 (Ohio

App. June 16, 1998).

-18-

As with delayed damages, the Plaintiff argues that the fraud was not discovered until August 16, 2002, when the Third Circuit affirmed a decision of a bankruptcy court that the CM Holdings COLI plan was a tax sham. Only after this final decision was the fraudulent conduct revealed. The standard, however, is not "actual awareness", but when the available facts were "sufficient to alert a reasonable person to the possibility of wrongdoing". A final order of an appellate court is not required to alert a reasonable person as to the potential for fraud.

According to the Third Circuit's opinion: "In November 1997, the Internal Revenue Service ("IRS") filed a proof of claim for $4.4 million in taxes, $1.8 million in pre-petition interest, and a $1.35 million accuracy-related penalty." CM Holdings, 301 F.3d at 101. On its face, the IRS claim was "sufficient to alert a reasonable person to the possibility of wrongdoing". The fraud claims, therefore, accrued at the latest in November 1997.

The Court now turns to the Plaintiff's contract claims: Counts 1-4 (assuming these are contract, not negligence, claims), and Counts 5, 7, and 8. As concluded in the previous section, these claims are subject to the six-year limitations period for oral and implied contracts pursuant to O.R.C. § 2305.07. The limitations period runs from the alleged breach.

The Plaintiff essentially alleges two categories of breach: (1) breach of promises for realizing the financial benefits of the COLI plan, and (2) the breach of obligations to disclose fully and accurately all material information relating to the COLI plan. As to the first breach, courts and the IRS consider these COLI plans to be void *ab initio*, so the promised benefits were never realized. The breach, therefore, occurred when the plans were implemented. In addition, the alleged breaches regarding information disclosure were made in connection with creating and implementing the plan. This breach,

therefore, also occurred when the plan was implemented.  Accordingly, the contract claims accrued on February 16, 1990 at the latest, when the COLI plan was implemented.

The Court next considers Plaintiff's Count 6 for unjust enrichment, for which a six-year limitations period applies pursuant to O.R.C. § 2305.07.  Applying the reasoning of Investors REIT, courts have held that there is no discovery rule for claims of unjust enrichment.  Rather, the cause of action accrues on the date that money is retained under unjust circumstances.  Palm Beach, 665 N.E.2d at 723; Ignash v. First Service Federal Credit Union, 2002 WL 1938414 at *4 (Ohio App. August 22, 2002).

As stated with respect to the contract claims, the benefits of the COLI plan were never realized because the plan is void *ab initio*.  The Defendants, therefore, began retaining money under unjust circumstances at the time the plan was implemented.  Accordingly, the claim for unjust enrichment accrued on February 16, 1990 at the latest, when the COLI plan was implemented.

In summary, for the foregoing reasons the Court concludes that Counts 1-11 and 13 accrued at the time the COLI plan  was implemented, or February 16, 1990 at the latest. The fraud claims, Counts 12, 14, and 15 accrued when the IRS filed its proof of claim in the bankruptcy court, or November 1997 at the latest.  Accordingly, whether a four-year or six-year limitations period applies, all claims are barred unless the limitations periods were otherwise tolled.[2]

---

[2]     For completeness, the Court has set forth its entire analysis on the statutes of limitations. However, whether the claims are viewed as fraud or oral/implied contract, and even assuming the discovery rule applied to all claims, the latest the limitations period could have begun to run is November 1997, when the IRS filed its proof of claim.

3.  Tolling

The Plaintiff asserts that even assuming this action was filed beyond the applicable limitations period, the limitations periods were tolled.  The claims, therefore, are not time-barred.

The Plaintiff first asserts that the limitations periods were tolled pursuant to the "termination rule".  This rule has been applied only to claims for medical and legal malpractice, and provides that a cause of action for malpractice does not accrue until the professional relationship is terminated.  Jim Brown Chevrolet, Inc. v. S.R. Snodgrass, A.C., 752 N.E.2d 335, 337 (Ohio App. 2001).  By its terms, the rule could only apply to the claim for professional negligence (Count 9).

The termination rule, however, has never been extended beyond claims for legal and medical malpractice.  Following the holdings of Investors REIT and Grant Thornton, the termination rule cannot be extended into other areas of professional or business negligence.  Such application would work improperly to impose a discovery rule inconsistent with the statutory language.  Jim Brown, 752 N.E.2d at 337-38, citing, Investors REIT, 46 Ohio St. 3d at 182 and Grant Thornton, 57 Ohio St. 3d at 16.  Accordingly, in this case the termination rule does not apply to toll the limitations periods.

The Plaintiff next argues that the limitations periods were tolled due to partial payments.  It alleges that because the COLI plan and the Service Agreement with Newport require periodic payments, the limitations periods run from the date of the last payment.  If correct, the claims are timely.

O.R.C. § 2305.08 provides in part: "If payment has been made upon any demand founded on a contract, . . . an action may be brought thereon within the time limited by sections 2305.06 and 2305.07 of the Revised Code, after such payment".  Thus, for example, in the  case of a loan based upon an oral contract, the limitations period ran from the last interest payment.  Cummings v. Groszko,

-21-

603 N.E.2d 387, 390 (Ohio App. 1992).  The tolling for partial payments applies  when a defendant made a payment towards a contractual indebtedness.  <u>Slack v. Cropper</u>, 757 N.E.2d 404, 411 (Ohio App. 2001).

By its terms, this provision can only apply to the contract claims.  Even as to the contract claims, however, the Plaintiff misapplies the doctrine.  The provision is consistent with the general principle that the statute of limitations on a contract claim runs from the breach.  A breach of contract does not occur while payments are being made.  <u>See</u> <u>Grosko</u>, 603 N.E.2d at 390. ("defendant partly performed her part of the bargain by paying interest" during the initial loan period).  For example, if the Plaintiff had stopped paying the insurance premiums or fees on the Service Agreement, any claims of the Defendants would run from the last payment.  The Plaintiff's claims against the Defendants, however, are not comparable.

Here, the alleged breaches of contract do not arise from any purported refusals of the Defendants to fulfill any monetary obligations.  The breaches are an alleged neglect to provide complete and accurate information about COLI plan, and the lack of fulfillment of the promises of financial benefits.  The claims do not arise out of any demand for payment on a contractual indebtedness as required by section 2305.08.  Accordingly, the limitations periods are not tolled pursuant to this provision.

The Plaintiff also alleges that the statutes of limitations are tolled by the doctrine of equitable estoppel.  Equitable estoppel precludes a party from asserting certain facts when, by its own conduct, it has induced another to change his position detrimentally in good-faith reliance on such conduct. <u>Helman v. EPL Prolong, Inc.</u>, 743 N.E.2d 484, 495 (Ohio App. 2000); <u>Welfley v. Vrandenburg</u>, 1996

WL 145467 at *3 (Ohio App. March 29, 1996).  The doctrine may be used to prevent inequitable application of the statute of limitations.  <u>Helman</u>, 743 N.E.2d at 495; <u>Livingston v. Diocese of Cleveland</u>, 710 N.E.2d 330, 339 (Ohio App. 1998); <u>Cerney v. Norfold & Western Railway Co.</u>, 662 N.E.2d 482, 488 (Ohio App. 1995); <u>Schrader v. Gillette</u>, 549 N.E.2d 218, 221 (Ohio App. 1988).

The elements of equitable estoppel are: (1) a party made a factual misrepresentation, (2) the misrepresentation was misleading, (3) it induced actual reliance which is reasonable and in good faith, and (4) detriment to the relying party.  <u>Helman</u>, 743 N.E.2d at 495; <u>Hoeppner v. Jess Howard Electric Co.</u>, 780 N.E.2d 290, 297 (Ohio App. 2002); <u>Welfley</u>, 1996 WL 145467 at *3; <u>Livingston</u>, 710 N.E.2d at 339; <u>A.S. v. Fairfield School District</u>, 2003 WL 22764383 at *2 (Ohio App. November 24, 2003).  With respect to the first two elements, actual or constructive fraud is required.  <u>Helman</u>, 743 N.E.2d at 495; <u>Livingston</u>, 710 N.E.2d at 339.

In addition, in the context of a statute of limitations, the misrepresentation must be intended specifically to delay the filing of a lawsuit, such as misstating the limitations period, promising a favorable settlement if a lawsuit is not brought, or similar conduct.  <u>Helman</u>, 743 N.E.2d at 495; <u>Livingston</u>, 710 N.E.2d at 339; <u>Cerney</u>, 662 N.E.2d at 488; A.S., 2003 WL 22764383 at *2; <u>Welfley</u>, 1996 WL 145467 at *3 .  Alternatively, the defendant must have concealed or destroyed evidence of wrongdoing which the plaintiff could not discover despite due diligence.  <u>Ignash v. First Service Federal Credit Union</u>, 2002 WL 1938414 at *3 (Ohio App. August 22, 2002).  Generally, to toll a statute of limitations, the defendant's conduct must somehow have been calculated to induce a party to forego the right to sue.  <u>Hoeppner</u>, 780 N.E.2d at 297; <u>Welfley</u>, 1996 WL 145467 at *3.

Here, the Plaintiff's allegations for equitable tolling are no different from its allegations of

substantive fraud and negligent misrepresentation.  It essentially seeks to impose the discovery rule, rejected above, through the "back door" by characterizing the circumstances as equitable estoppel. What is required to toll a statute of limitations, however, are allegations that the Defendants' conduct specifically induced the Plaintiff to forego or delay filing suit, resulting in a time bar.  No such specific allegations are made in the Complaint.  Equitable tolling, therefore, does not apply.

    4.  <u>Conclusion On Statutes of Limitations</u>

For the foregoing reasons, all claims are barred by the applicable statutes of limitations. Whether based on a four-year or six-year limitations period, the claims were not filed timely.  In addition, none of the limitations periods were tolled.

### III.  <u>CONCLUSION</u>

For the foregoing reasons, the Defendants' Motions To Dismiss (Docket Nos.  14, 15, 16, and 17)  are GRANTED in their entirety.  Accordingly, this action is hereby dismiss with prejudice, each party to bear its own costs.

IT IS SO ORDERED.


Issued: October 14, 2005        <u>  s/ John M. Manos         </u>
                             UNITED STATES DISTRICT JUDGE